IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NORTH CAROLINA

WESTERN DIVISION

FILED

JUL 27 2023

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY_____DEP CLK

BRIAN LEE NESTOR,
    Plaintiff,

v.

UNITED STATES OF AMERICA,
    Defendant.

No. _____

COMPLAINT UNDER THE FEDERAL
TORT CLAIMS ACT FOR DAMAGES

5:23-CT-3218-FL

---

AND NOW COMES, Brian Lee Nestor, pro se, and files the following Federal Tort Claim for Damages and in support thereof, states the following:

## INTRODUCTION

1. Plaintiff, Brian Lee Nestor (hereinafter "Plaintiff") is sueing Defendant UNITED STATES OF AMERICA under the Federal Tort Claims Act (FTCA) for injuries arising from a road collision between a Bureau of Prison transport bus that he was riding in, and another Bureau of transport bus;

## STATEMENT OF THE CASE

2. The Plaintiff claims four causes of action against the UNITED STATES and that through the Bureau of Prisons, they committed:

   i) Negligence

   ii) Negligence per se

      (Both claims of negligence were by and through a Bureau of Prison transport bus driver (hereinafter "John Doe #1 - a Bureau of Prison's transport bus driver who has yet to be identified) who negligently failed to exercise reasonable care while operating a transport bus causing the Plaintiff personal injury.)

   iii) Negligently spoilated evidence relevant to counts (1) and (2) thereby interfering with and/or delaying the administrative and legal process

   iv) Negligent infliction of emotional distress;

## STATEMENT OF FACTS

3. Plaintiff incorporates herein by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein;

-1-

A. PARTIES

4. The Plaintiff, Brian Lee Nestor, is a federal inmate residing at Butner LSCI, in Butner, N.C.;

5. The UNITED STATES OF AMERICA is the Defendant and that the correctional officer who "braked the bus" hard in which Plaintiff refers to correctly as the "Accident" (which Plaintiff refers to hereinafter as John Doe #1), was acting as an agent of the UNITED STATES within the scope of his employment;

B. STIPULATED FACTS REGARDING THE ACCIDENT

6. Plaintiff was involved in a "Medical Emergency called on Inmate who fell while in a transport bus at the Marshall Circle. Inmate was returning to LSCI when the bus braked and he fell out of his seat, per staff." (See EXHIBIT MR 16);

7. The accident occurred in the Marshalls Circle outside of the FMC Hospital building, in Butner, N.C. (See EXHIBIT MR 16); at approximately 10:40 AM on March 01, 2023;

8. That the correctional officer was backing up in reverse going away from the medical building when the "bus braked" as per staff. (See EXHIBIT MR 16); However, there seems to be conflicting statements here between the government's very own witnesses, in which the Plaintiff correctly points the Court to the government's lack of veracity. (See EXHIBIT MR 1)(Medical report where provider Kubin, Rachel PA-C states "that staff verified there was no collision or issue with the bus" and then goes on to add that "it was very slowly backing out of the Marshalls Circle when this occurred." However, that report is completely belied by the ADMINISTRATIVE NOTE 1 (EXHIBIT MR 16) where staff clearly stated, "the bus braked and he fell of (sic) his seat per staff." The Plaintiff herein agrees that the bus indeed braked hard, but only "after" it collided with the bus behind it, coming to an abrupt stop, "after" the collision. (See EXHIBIT A Witness Statement of Kevin Clark, an inmate riding the bus at the time of the collision);

9. That Plaintiff was able to depart the bus but only with the assistance of staff (See EXHIBIT MR 16);

10. That Plaintiff was initially transferred from a gurney to a UR stretcher (See EXHIBIT MR 16);

-2-

Case 5:23-ct-03218-FL    Document 1    Filed 07/27/23    Page 2 of 21

11. That Plaintiff was dazed and confused initially after the accident, having lost consciousness momentarily, but was later able to recall "he was in a sitting position when the bus suddenly stopped." (See EXHIBIT MR 16);

C. ADDITIONAL FACTS REGARDING THE ACCIDENT

12. Plaintiff incorporates herein by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein;

13. Plaintiff claims that the testimony/report of the government is completely fabricated and that there was indeed an accident involving the transport bus that he was riding in, and the transport bus behind the Plaintiff (See EXHIBIT A, Witness Statement of Kevin Clark, testifying under penalty of perjury, that he was riding the bus when it collided into another prison transport bus, while in the process of backing up in reverse.);

14. Plaintiff claims that the accident was caused by a negligent act or omission of a Bureau of Prison bus transport employee who was acting within the course of their federal employment;

15. Plaintiff claims that John Doe #1. the transport bus driver, neglected to provide a lookout for incoming vehicles into the Marshalls Circle and did not check his rear view mirror before accelerating the gas pedal and thus rammed his bus into the incomming bus in the Marshalls Circle. Obviously, had he checked his mirror he would not have backed into the bus behind his vehicle;

16. That the driver of the other transport bus quickly removed his vehicle after having a brief discussion with John Doe # 1;

17. That after the accident, Plaintiff claimed he was injured and that he had a brief loss of consciousness and a state of confusion as a result of the collision. Plaintiff received medical treatment after the collision and continues to receive treatment up unto the time of this filing;

18. That Plaintiff was sitting in the last bench seat of the passenger side of the bus, alone, and with no seatbelt and was the closest to the impact point of the bus than the other inmates who were all seated in front of him;

19. That Plaintiff's seat had no seatbelts (which Plaintiff readily agrees is not required by law, and is not the contention of the Plaintiff) and was a

-3-

smooth bench seat which enabled Plaintiff's body to slide off the seat easily upon impact;

20. That plaintiff was in handcuffs and shackled at the time of the accident;

21. That the verbage regarding the impact of the accident was minimalized by staff, claiming that Plaintiff merely "lost his balance and slid off his seat." (See EXHIBIT MR 16) When in reality, Plaintiff claims he was thrusted out of his seat, and not just hitting his shoulder as suggested by staff (as they were not present to witness his fall) but the impact affected Plaintiff's neck, back and knee (basically the entire left side of Plaintiff's body). That these areas of his body made contact with the floor of the driver's side of the bus(keeping in mind he fell to the left...his right side was against the wall of the bus;

22. That Plaintiff claims staff falsified the accident report.

23. That Plaintiff claims staff then subsequently or negligently spoiled the evidence, that being emails to staff regarding medical claims as well as the accident information regarding the video of the accident;

D. TREATMENT AFTER THE ACCIDENT

24. That Plaintiff at the time of the accident told both medical and correctional officers/staff that "he was experiencing pain in both his neck and back areas, "different areas of his left side, but mainly his shoulder." (See EXHIBIT MR 16)(EXHIBIT MR 6, where "Patient complained of left shoulder (acute on chronic))

25. "PT states he has a new back pain since the fall on a CTO bus earlier today that was assessed for at the FMC." (EXHIBIT MR 10) (note that the time of this note was entered at 14:06 (2:06 PM.) approximately only two hours after Plaintiff's injury occurred and this includes the time from FMC to LSCI compound. The point that the Plaintiff is making is that there was virtually no missing time lapse in his discussions of his injury;

26. That the fact that the writer of the administrative note writes that "Pt was observed walking briskly from Wake Unit pushing his wheelchair to medical "in no acute distress," couldn't be further from the truth. The Plaintiff was walking briskly as the writer puts it, due to the fact that the Plaintiff wanted to get to medical as quickly as possible to seek treatment, and moreover. complained about pain when he got there. The attempt by medical staff to minimalize Plaintiff's injuries is frustrating to the Plaintiff, when not only does he have to fight for

-4-

the truth to come out regarding the accident, but that he is spied on from afar and accused of making up pain later in the day...when he reported the pain less than two hours from the accident; (EXHIBIT MR 10)

27. The Plaintiff was exhaused both mentally and physically after having been at FMC hospital all morning. He felt that staff were not willing to help him as he was being accused of actually not being injured, while he was in pain. Plaintiff was thrown a barage of questions whether pains were pre-existing or new and was asked to point specifically to the 'new spot" and more specifically to try to describe the type of pain. Plaintiff states that one physician's assistant was extremely impatient with him, in fact becoming combative to where another assistant suggested he go back to his unit where he had established rapport with his physician's assistant at LSCI. "He got into a short verbal confrontation with the PA about the walker before leaving the UR." (EXHIBIT MR 16) The end result was that Plaintiff just wanted to leave and get help from his own physician assistant back at his Unit Wake A, and the onsite medical report was left incorrect;

28. The Plaintiff had inquired about an evaluation for medical equipment, i.e., a walker, so he could properly ambulate and was told that "he would have to ask the medical staff at his facility for a further evaluation...that this was not 'their current role'". (EXHIBIT MR 3) That practically no evaluation was done on site at FMC Hospital, as it appeared they all wanted to go to lunch. Plaintiff was practically rushed back to the transport bus, with no in depth evaluation;

29. The Plaintiff upon returning to his compound, sought treatment at his medical unit at LSCI and was attended to by Physician Assistant Ms. Dowrich. During Plaintiff's meeting with Ms. Dowrich just a few hours after the accident, his pain was "described as intense, starting from right side of lower back radiating to mid back. Pain is described as sharp and shooting rated 9/10 emcounter." (EXHIBIT MR 12) That this was a more accurate assessment of Plaintiff's injuries and Plaintiff as of this submission still has fluctuating degrees of pain in both his neck, back and knee areas;

30. That Plaintiff has submitted several documented complaints where he has reached out to the medical department for assistance but has not been given adequate pain treatment. Even moreover, Plaintiff has unbelievably been denied even a therapeutic mattress for the comfort and care to manage the pain of his injury. The Plaintiff states the Butner Facility has no interest in resolving nor ameliorating Plaintiff's pain or helping him adequately with pain management

-5-

thus, adding to Plaintiff's claim for damages for physical pain and suffering. (EXHIBITS 1 through 12) More specifically, See EXHIBIT 10-- stating "rehab only consults in mattresses for those who are paralyzed amd at risk of ulceration," however, Plaintiff has since learned that mattresses are now given out as "rewards" to those individuals participating in the drug program. See EXHIBIT 11 - where Plaintiff sends an inhouse email to Health Care stating 'my back tonight and my neck are in extreme pain and I'm tired of begging for help...I have to suck down pills to the point they make me sick.'" (Plaintiff herein is referring to the 800mg Ibuprofin pills amongst other pills that he was taking for back pain.) This is just one of many EXHIBITS 1 through 14 submitted; please review all EXHIBITS 1-14 and Medical EXHIBITS MR 1 through MR 20;

31. That Plaintiff's pain and suffering have been non-stop and ongoing since March 01, 2023. That Plaintiff has tried steaming his pains in the shower and applying the Lanacaine as prescribed, but it is not resolving Plaintiff's pain in his back. (See EXHIBIT 12 dated 03/30/23; "The Lanacaine doesn't seem to be helping my back." (Plaintiff did receive nerve block in a shot into the back of his head to alleviate some of his post concussion syndrome effects, and it has worked to a minimum degree.);

32. That Plaintiff has repeatedly, to the point of adnauseum, made multiple requests for a walker instead of a low-riding wheel chair to balance himself, as the wheelchair tended to flip over...which eventually did, and caused the Plaintiff to refracture his already broken finger. Plaintiff eventually did, after five months of complaining, finally receive a walker. By then however, Plaintiff's back was even more agitated having to bend over the wheelchair to ambulate;

33. That Plaintiff has spent hours going to and from and waiting for appointments and, but to no avail, simply to be handed a tube of Lanacaine. That Plaintiff's feeling of hopelessness and frustration are exacerbated by the medical department's lack of concern regarding Plaintiff's care;

34. That Plaintiff spoke with Captain Frisk and Assistant Warden Thompson on main line (chow hall ) after the accident and the Captain stated "You are not entitled to know the details of the accident report, and you will never see the report." Even further, "We are not obligated to provide you with a copy of it." During that

-6-

conversation, Plaintiff was then further advised that he had the right to pursue legal action. (See EXHIBIT 9 - where the Assistant Warden responds to Plaintiff regarding his meeting with her and the Captain at the chow line regarding his accident and states that "Your email has been forwarded to AHSA Craig in reference to ordering a walker for you and we will follow up with medical to see what else can be done." (That was on March 13, 2023.) That on March 27, 2023 Plaintiff fell when his wheelchair flipped in front of Lt. Toro, and Plaintiff was escorted by the Lt., to medical, then being diagnosed with a re-fractured finger. The point that the Plaintiff is awkwardly trying to make herein, is simply that Plaintiff was told by the physical therapist to struggle no matter how hard to keep walking and don't give up use of your legs, thus Plaintiff's desire for a walker. However, the continued use of pushing down on the wheel chair strained Plaintiff's back muscles using the wheel chair as a walker every day. Also and moreover, that Plaintiff would NEVER have complained to the Warden's office hadn't there been an actual accident that happened.

35. That Plaintiff was astonished, that here he was complaining to the "top of the food chain, so to speak" about a cover up if nothing else, regarding the misreporting of a serious accident, and that at that level, despite medical records and witnesses, the attitude of the Captain Frisk was less than honest, which was salt in the wound to the Plaintiff. Moreover, the Plaintiff has since had yet a more recent conversation with the same Captain to be told that Plaintiff will NEVER see the videotape of the accident and "neither will anyone else" meaning it would be, or was, destroyed;

E. PLAINTIFF'S MENTAL HEALTH AND BARRIERS

36. Plaintiff has suffered and still continues to suffer from PTSD as a result of a previous brutal assault and battery in which he was a victim of on December 01, 2022;

37. That at the time of the Plaintiff's bus accident, Plaintiff recalls laying on his stomach with his face pressed against the driver's side floor with his face facing towards the front of the bus, at eye level to the floor. Plaintiff witnessed officer's boots rapidly advancing towards him down the aisle and this triggered his PTSD caused by the assault and battery at the Allegheny County Jail, just months prior on December 01, 2022. That when Plaintiff was previously assaulted his left eye socket was kicked in by an officer's steel toed boot. That at that time, of the bus accident, and the "boots coming down the aisle, the Plaintiff

-7-

Case 5:23-ct-03218-FL    Document 1    Filed 07/27/23    Page 7 of 21

suffered a devastating flashback and began screaming, "I'm not resisting," several times.  He mistakenly thought he was being assaulted again, only this time by the officers trying to attend to him;

38.   That Plaintiff still suffers from both emotional trauma and nightmares from both incidents, as the second incident retriggered the first incident and has caused Plaintiff to need to reach out to psychology for mental assistance. (See EXHIBIT 4 - Plaintiff's email to psychology);

39.   That Plaintiff now, to a greater extent than prior to the accident, is afraid of sudden movements and stays shuttered in his room, whenever possible;

F.   ACTIONS OF THE BOP REGARDING PLAINTIFF'S EVIDENCE AND THE PLAINTIFF

40.   Plaintiff claims, and it is physically documented, that since the filing of his administrative claim, he has been severely punished and evidence has been spoiled as also discussed infra in this Complaint.  That on May 01, 2023, with the temporal proximity just days away from the filing of his Federal Tort Claim, that Plaintiff's legal aide's phone number (903) 721-4374 was blocked. His administrative contact button on the computer as of that date was also blocked.  When Plaintiff went to the main line (chow hall) he had spoken with no less than his counselor in Wake A, the Unit Manager of Wake A, the trust fund manager Ms. Batts(who provided two separate reasons for the block, both inconsistent), Mr. Hayes from SIS, the Assistant Warden Ms. Thompson.  Most of the responses he got were simply, it "was done from the higher ups" or " I don't know" or "It's not my department."  The outcome was Plaintiff's Administrative Request to Staff button was blocked on the computer. What this means, is that staff deliberately blocked Plaintiff's access to staff so that not only could future complaints not be documented, but also, interestingly the ones that had been documented, were now erased as if though never filed. The evidence of discussing the accident and medical care had been spoiled/destroyed. However, in anticipation of the Bureau of Prisons doing this, Plaintiff was able to make copies of most of the emails to staff to

-8-

use as exhibits as done herein this very Complaint. Lastly, after having email access for his ten year term in prison at Seagoville Texas, and after six months of serving time here at Butner, LSCI, Plaintiff's loved ones, family and friends and attorney access have all been completely blocked in the computer and Plaintiff amazingly after all of this time has no email access and was told that this is because that sex offenders are not allowed email access, even though Plaintiff had it all of that time and that other sex offenders do have access to their attorney through email. (See EXHIBIT 13)

41. That at the current time of this writing, Plaintiff's administrative access button has been suddenly reactivated albeit, the messages discussing the accident and Plaintiff's medical concerns have all been amazingly erased, including the exhibits the Plaintiff has produced herein. Plaintiff's legal counsel however, is still blocked along with family members. Plaintiff has been provided no answer from staff except that the directive "came from the higher ups." Plaintiff asks as to what peneological interest is there to blocking his access to his attorney. Emails are important in that Plaintiff has witnessed a staff member throwing U.S. mail in the trash, therefore, his litigation is not processed; (See EXHIBIT 13)

## G. PLAINTIFF's WITNESSES

42. Plaintiff incorporates herein by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein;

43. That Plaintiff post the accident, has diligently worked to gather names of witnesses and statements from those witnesses who were riding the transport bus along with the Plaintiff at the time of the bus accident;

44. That strangely, the Director of Safety, came to the Plaintiff's Unit to ask for a list of those witnesses who witnessed the accident. That Plaintiff told the Director that he would produce a list upon trial. He further stated to the Director, that his proposed counsel was holding the list so that it didn't disappear. He also stated that he didn't want to reveal the names of the witnesses just yet, so as they would not be retaliated against. The Director then went into the office of the Unit Manager, Mr. Murphy, shut the

-9-

door to have a private conversation and then left. However before leaving, the Director asked the Plaintiff for a copy of what statements his staff had made and the Plaintiff gave him the statements. The Director proceeded to copy the statements in the Managers office and then left the premises. The Plaintiff never heard from the Director again;

45. That since Plaintiff's retaliation of blocked phone numbers, email access denied, and blocked access to administrative staff, Plaintiff's witnesses who were willing to testify have all now been successfully deterred by staff from coming forward to give their statements....that is except for one;

46. That Plaintiff herein has produced and attached a signed Witness Statement from Kevin Clark, who rode the bus with the Plaintiff. Kevin told the Plaintiff that he was extremely hesitant about coming forward for fear of retaliation, but that as a Christian, he gave the matter a lot of thought and prayer and felt it was the right thing to do. That the Plaintiff's witness, Kevin Clark's witness statement (See EXHIBIT A) largely corroborates the Plaintiff's claim and the events surrounding the accident;

## CONCLUSIONS OF LAW
### JURISDICTION AND VENUE

47. Plaintiff incorporates herein by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein;

48. This Court has jurisdiction over the claim asserted against the Defendant UNITED STATES OF AMERICA on the grounds that the claim is asserted pursuant to the Federal Tort Claims Act and this Court has subject matter jurisdiction over such claims pursuant to 28 U.S.C. 1346(b);

49. This Court has supplemental jurisdiction over all claims asserted in this action under 28 U.S.C. 1367(a) because they are so related to the claim asserted against the Defendant UNITED STATES OF AMERICA that they form part of the same case or controversy under Article III of the United States Constitution;

50. Venue is proper in the Eastern District of North Carolina, Western Division pursuant to 28 U.S.C. Section 1402(b) because the UNITED STATES is the Defendant and Plaintiff currently resides in the State of North Carolina;

51. Plaintiff timely presented an administrative tort claim to the Federal Bureau of Prisons, Mid-Atlantic Region, pursuant to 28 U.S.C. § 2671 et seq.,

claim number TRT-MXR-2023-04821, and was notified by mail in a letter dated May 31, 2023 that the UNITED STATES DEPARTMENT OF JUSTICE, Federal Bureau of Prisons Mid-Atlantic Region, denied Plaintiff's claim; Admin. requirements are satisfied;

52. That personal injuries and resulting damages that form the basis of this Complaint were proximately caused by the negligence, wrongful acts, and/or omissions of an employee of the UNITED STATES BUREAU OF PRISONS, MID-ATLANTIC REGION. The employee was acting within the scope of his employment, under the circumstances in which the UNITED STATES, if a private person, would be liable to Plaintiff in the same manner and to the same extent as a private individual under the laws of the State of North Carolina;

53. Plaintiff's injury herein, "occurred in North Carolina, and thus North Carolina Tort Law governs Plaintiff's claim. 28 U.S.C. §1346(b)(1); Miller v. United States, 932 F. 2d 301, 303 (4th cir. 1991). Under North Carolina Law a negligence claim requires proof of "(1) a legal duty; (2) a breach thereof; and (3) injury proximately caused by the breach." Bridges v. Parrish, 366 N.C. 539 541, 742 S.E. 2d. 794 (2013): Camalier v. Jeffries. 340 N.C. 699, 706, 460 S.E. 2d. 133 (1995). As relevant here, "a prison official is liable for negligence when he knows of, or in the exercise of reasonable care should anticipate, danger to the prisoner, and with such knowledge of anticipation fails to take proper precautions to safeguard his prisoners." State ex. rel. Williams v. Adams, 288 N.C. App. 446, 448, 363 S.E. 2d. 868 (1988)("Defendant prison officials had a duty of reasonable care to protect the Plaintiff from foreseeable harm.") Joyce v. United States, 2023 U.S. Dist. LEXIS 42845 *9, 10 (4th cir. 2023);

ISSUES FORECLOSED TO THE UNITED STATES IN THIS MATTER

54. Plaintiff incorporates herein by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein;

55. That Plaintiff herein claims the discretionary function exception does not bar claims asserted under the FTCA where as here, Plaintiff asserts that he was injured "by the pertinent federal employee's negligent or reckless driving." See Karmue v. Remington, 2020 U.S. Dist. LEXIS 46840 at *53 (1st cir. 2020);

56. That the Plaintiff was not contributorily negligent. (Note that the Plaintiff herein agrees that "several courts have decided not to secure inmates with safety belts during transport, and Plaintiff agrees with that decision. However, the Plaintiff is only mentioning the seatbelt in the context that he was unable to prevent his fall during impact as he was handcuffed and shackled. Again, the seatbelt

-11-

`issue is NOT part of the Plaintiff's negligence claim"

## CLAIMS OF THE PLAINTIFF

57.  Plaintiff incorporates herein by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein:

CLAIM No. One:   JOHN DOE#1 WAS NEGLIGENT (RECKLESS DRIVING)

58.  To prevail in a negligence action under North Carolina Law, the burden is on the Plaintiff to establish by a preponderance of the evidence the essential elements of negligence: (1) duty, (2) breach of duty, (3) proximate cause, and (4) damages.  Camalier v. Jeffries, 340 N.C. 699, 706, 460 S.E. 2d 133, 136 (1995) ; Miller v. Henry, 270 N.C. 97, 99-100, 153 S.E. 2d 798, 800 (1967)."  Carmely v. United States of America, 2023 U.S. Dist. LEXIS 64669 *7 (4th cir. 2023);

59.  "Any person who drives any vehicle upon a highway or public vehicular arena without due caution and circumspection and at a speed or in a manner so as to endanger any person or property shall be guilty of reckless driving." (N.C. GEN. STAT. § 20-140(b);

60.  "Defendant John Doe #1, as a transport bus driver and a motorist operating a vehicle using a public vehicular arena, owes a duty of reasonable care to the Plaintiff "to maintain a lookout in the direction in which the motorist is traveling," and thus, John Doe #1, owed that duty to the Plaintiff." Carmely at *7,8 (quoting Watsonn v. White, 309 N.C. 498, 505, 308 S.E. 2d 268, 273 (1983);

61.  "John Doe #1" , breached his duty of reasonable care by (a) failing to keep proper attention; (b) driving in a reckless and careless manner; (c) failing to keep a proper lookout for vehicles lawfully operating in the vicinity; (d) failing to have proper regard for the persons and property so situated; (e) failing to keep proper control of his vehicle; and (f) failing to keep a lookout in the direction of travel.  In doing so, ((a) through (f)) supra, John Doe #1, breached his duty of care;

62.  John Doe #1's actions were the proximate cause of the Plaintiff's injuries, largely to plaintiff's back injuries which were non-existing and not exacerbated as with Plaintiff's incurred neck, head and knee injuries.  Hairston v. Alexander Tank & Equip. Co. 310 N.C. 227, 235, 311 S.E. 2d 559, 566 (1984)(proximate cause is a question of fact): Murphy v. Georgia Pacific Corp., 331 N.C. 702, 706, 417 S.E. 2d 460, 463 (1992)("Proximate cause is a cause which in natural and continuous sequence produces a plaintiff's injuries and one from which a person of ordinary

prudence could have reasonably foreseen that such a result or some similar injurious result was probable.") Peal by Peal v. Smith, 115 N.C. App. 225 at 234 444 S.E. 2d at 679 (questions of reasonable foreseeablility are also left for the factfinder). John Doe #1's negligent actions, that including but not limited to, his failure to keep a proper lookout while driving - is a cause which produced Plaintiff's injuries "in a natural and continuous sequence, and a person of ordinary prudence could reasonably foresee that such a failure to keep a proper lookout could result in a collision; indeed such failures result in e automobile accidents every day." Carmely at *8;

63. The proper standard by which to measure the amount of damages is a question of law. Olvetti Corp. v. Ames Bus. Sys., Inc., 319 N.C. 534, 584, 356 S.E. 2d 578, 586-587 (1987). Plaintiff's damages are discussed at length supra. Thus, because John Doe #1, owed Plaintiff a duty of reasonable care to maintain a proper lookout amongst Plaintiff's other claims of breaches of duty that Defendant has committed, and because Defendant's breach was the proximate cause of Plaintiff's injuries, Defendant should be found negligent under North Carolina law and the United States should be found liable for the negligence of John Doe #1, the Bureau of Prison's Transport Bus Driver;

Claim No. Two: JOHN DOE #1 WAS NEGLIGENT PER SE (RECKLESS DRIVING)

64. Plaintiff incorporates herein by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein:

65. John Doe #1 was also negligent per se under N.C.G.S. §§ 20-141(m) along with N.C. GEN. STAT. § 20-140(b). "To prevail on a negligence per se claim, a Plaintiff must show the following; (1) a duty created by a statute or ordinance; (2) that the statute or ordinance was enacted to protect a class of persons which includes the Plaintiff; (3) a breach of the statutory duty; (4) that the injury sustained was suffered by an interest which the statute protected; (5) that the injury was of the nature contemplated in the statute; and (6) that the violation of the statute proximately caused the injury." Carmely at *9,10 (quoting Birtha v. Stonemor, N.Carolina, LLC, 220 N.C. App. 286, 293, 727 S.E. 2d 1,8 (2012);

66. Under North Carolina Law, failure to abide by certain traffic laws such as N.C. GEN. STAT. § 20-140(b) and 20-141(m)(failing to decrease speed to avoid accident), constitutes negligence per se. Mc Devitt v. Stacy, 148 N.C. App. 448 458, 559 S.E. 2d 201, 209 (2002); McNeely v. Bollinger, 155 N.C. App. 220, 573

-13-

S.E. 2d 773 (2002)(table); <u>Casetta v. Compton</u>, 258 n.C. 71, 74, 123 S.E. 2d 222, 224 (1961). Under these statutes, their North Carolina interpretations, and •∷ ⠐⠄ evidence that Plaintiff will be able to present at trial, the Plaintiff will readily establish a duty created by statute, that these statutes were enacted to protect other Plaintiffs (inmate passengers) like Plaintiff Mr. Nestor, that John Doe #1 breached the statutes by causing the collision, that Plaintiff's injuries were sustained by an interest protected in these statutes, and that John Doe #1's violation proximately caused Plaintiff's injury. John Doe #1 is therefore negligent per se under these statutes;

67. Finally, in regards to Plaintiff's negligence per se claim, "when a statute sets a standard of care for the protection of others, violation of that statute is negligence per se...But in the absence of a safety statute, conduct is judged by the "reasonably prudent person" standard, a violation of which is negligence. <u>Hinnant v. Holland</u>, 92. N.C. App. 142, 147, 374 S.E. 2d 152, 155 (1988);

<u>Res Ipsa loquitur</u> ( In regards to Plaintiff's negligence and negligence pro se claims)

68. Herein, specifically regarding Plaintiff's severe back injuries, which were, prior to the accident, non-existent, Plaintiff invokes the doctrine of Res Ipsa Loquitur. "That doctrine "is applicable when no proof of the cause of injury is available, the instrument involved in the injury is in the exclusive control of the Defendant, and the injury is of a type that would not normally occur in the absence of negligence." <u>Silverman v. U.S.</u> 2011 U.S. Dist LEXIS 1806 at *25 (4th cir. 2011) (quoting <u>Bowlin v. Duke Univ.</u>) 108 N.C. App. 145, 149, 423 S.E. 2d 320, 322 (1992);

Claim No. Three: Negligently spoilated evidence relevant to counts (1) and (2) thereby interfering with and/or delaying the administrative and legal process;

69. Plaintiff incorporates herein by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein;

70. ""The Spoilation of Evidence Rule allows the drawing of an adverse inference against a party whose intentional conduct caused not just the destruction of the evidence... but also against one who fails to preserve or produce evidence." <u>Hodge v. Walmart Stores, Inc.</u>, 360 F.3d 446 at 450 (4th cir. 2004)(citing <u>Vodusek</u> <u>v. Bayliner Marine Corp.</u>, 71 F.3d 148, 155-56 (4th cir. 1995); <u>NRLB v. Ford Radio</u> <u>& Mica Corp.</u>, 258 F.2d 457, 463 (1958)). This infrence "cannot be drawn merely from the negligent loss or destruction of evidence; the inference requires a showing that the party knew the evidence was relevant to some issue at trial and that his [or her] willful conduct resulted in its loss of destruction."<u>Id</u>.

-14-

(quoting <u>Vodusēk</u>, 71 F.3d at 156)  A court must also find that "the evidence would have been relevant to an issue at trial, and otherwise would naturally have been introduced into evidence." <u>Trigon Ins. Co. v. United States</u>, 204 F.R.D. 277, 286 (E.D. Va. 2001).  The moving party bears the burden of showing that "the adverse party had a duty to preserve the allegedly spoiled [evidence] and that the [evidence was] intentionally destroyed."<u>Id</u>."  <u>Meyer v. Bodkie-Noell Enters</u>, 2011 U.S. Dist LEXIS 1600 AT *25-27 (4th cir. 2011);

71.  A trier of fact may infer from a party's spoilation of evidence relevant to a litigated issue that the evidence was unfavorable to that party.  <u>Gomez v. Stop & Shop Supermarket Co.</u>, 670 F.3d 395, 399 (1st cir. 2012).  This rule is based on "the commonsense notion" that a party who destroys a piece of evidence or permits it to be destroyed when facing litigation and while knowing its relevancy to the case may have done so because the evidence hurts his position.  <u>Testa v. Wal-mart Stores, Inc.</u>, 144 F.3d 173, 177 (1st cir. 1988). To permit the trier of fact to draw that adverse inference, the movant must show that (1) evidence was destroyed or not preserved; (2) the opposing party had notice of a potential claim; and  (3) the opposing party had notice of the relevance of that claim to the destroyed evidence.  <u>Gomez</u>, 670 F.3d at 399."  <u>Kormahyah Karmue v. Brenton Moore, et al.</u> 2023 DN# 012P; 2023 U.S. Dist LEXIS 18856 at *29.;

72.  That in regards to spoilated evidence as applied to Plaintiff's accident, Plaintiff takes issue with the lack of preservation of the video footage of the accident  at the accident location which was filmed by the FMC Hospital Building cameras at the front entrance way on the front of the building at the FMC Hospital in Butner, NC., on March 01, 2023 at or around 1030 AM; Plaintiff also takes issue with the lack of preservation of the "email evidence".  (emails that were exchanged between BOP Staff and Plaintiff regarding the accident along with discussions regarding Plaintiff's injuries) normally accessible to inmates by engaging the Administrative Request Button on the BOP/Inmate computers provided for inmate use.

73.  That the very week following the plaintiff's filing of his Administrative Tort Claims, Plaintiff's Administrative Request Button became disabled/insensitive. When Plaintiff would try to activate/push the button, he received a message stating you do not have access to this service.  This meant that Plaintiff not only no longer had access to retrievable documentation (evidence) regarding past responses from BOP staff regarding the accident in question, but also, discussions with the medical staff regarding and documenting his medical complaints as a result of the accident.  This complete blockage of Plaintiff's access to Administrative Staff,

blocked Plaintiff from providing to the court documented proof that Plaintiff requested or complained of medical attention;

74. That after Plaintiff met with, no less than ...Ms. Ramos, his counselor, Mr. Murphy, his unit manager, Mr. Craig, the Director of Medical Services, Ms. Batts the Trust Fund Supervisor who is in charge of Tru Lincs/emails, Mr. Hayes, the SIS officer, Mr. Frisk, the Captain, Ms. Thompson the Assistant Warden, Mr. Hozapfle the out going Warden and finally Ms. Heckard the new Warden, did Plaintiff's Administrative Request button get restored, but his messages from conversations with staff were deleted, especially the ones with Captain Frisk regarding the Accident. However, Plaintiff had suspected that these items needed to be preserved as they would be crucial to proving his case, so Plaintiff printed out most of the messages before they were deleted by the staff. (See EXHIBITS 1-14 herein, especially EXHIBIT 1, where Plaintiff thanks the AW & Captain for speaking with him at the main line to discuss his injuries incurred in his bus accident and clearly states, "If I am claiming something inaccurate, please advise.") This statement clearly does not indicate evidence of someone trying to makeup or create facts and even invites the Warden to object if he is not telling the truth or if there is a discrepancy;

75. That Plaintiff, even though being able to print out the conversations, still was left unable to document any requests for medical care, other than paper cop outs which would disappear. Also, Plaintiff is a level 3 care, which means that conversations and access to the medical team is critical, especially since Plaintiff had psychological PTSD issues and was unable to reach psychology via the computer to make an appointment(s). His paper cop outs in the mailbox disappeared. Plaintiff has been simply left to emotionally suffer on his own accord;

76. That Plaintiff's ability to contact his legal aid through telephone was also blocked initially, and then unblocked after two months of complaints and filing an administrative claim of retaliation. (He still has no email access at all, to family or his counsel.) Further, that since the filing of his tort claim, Plaintiff's email access to his family and his legal counsel still, sadly remains blocked. Plaintiff avers that even as a sex offender, he has had email access for his initial 8 year sentence at Seagoville(FCI) and 6 months at Butner LSCI for his probation violation. That this blocking of his emails has caused him a great amount of emotional stress and pain as his father (84yo) and sister communicate with him through email and his sister helps him with his legal and medical claims through email along with his counsel;

-16-

77. That Plaintiff was recently told by Captain Frisk, "that I know you like to take everybody to court, but you need to shut up and just lay it down." He again reiterated that Plaintiff would"never see the video or any proof of any accident " that Plaintiff could "file his little papers, but it won't do any good because you are never going to see anything...so go lay it down." These were the exact words of Captain Frisk.

78. Finally, the Plaintiff has made several efforts to stop the video from being spoilated. That the UNITED STATES had constructive notice from the Administrative Remedies, the Tort Claims, the conversations with staff, the conversation with the Director of Safety, etc. The United States has been on notice since March 01, 2023 to preserve the video tape. That if it now no longer exists as per staff's statements, how unprofessional they may be, there should be a remedy provided.

79. When a BOP employee knowingly disposes of an accident video involving an inmate and when, later, the defendant (BOP) calls the genesis of the accident into dispute, some remedy must occur. At the very least, in this instance, the Plaintiff herein, should be granted an adverse inference to remedy the BOP's actions. McDonald v. Wal-Mart Stores East, LP, 2008 U.S. Dist. LEXIS 2626 at *20 (4th cir. 2008)

Claim No. Four: Negligent infliction of emotional distress;

80. Under North Carolina Law, "to properly assert a claim of negligent infliction of emotional distress, " a Plaintiff must allege that (1) the defendant negligently engaged in conduct,(2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress...and (3) the conduct did in fact cause the plaintiff severe emotional distress." Sanders v. Duke Energy Carolinas, LLC. 2022 U.S. LEXIS 17187 at *6 (4th Cir. 2022)(quoting Newman v. Stepp, 376 N.C. 300, 852 S.E. 2d 104, 107 (N.C. 2020)

81. Plaintiff avers the BOP transport bus driver did indeed cause Plaintiff severe emotional distress, mental anguish, depression, phobia and sleep deprivation. Plaintiff's claims of emotional distress are more than conclusory, as he has attemped many times to see a staff psychologist, when one is available. Plaintiff has had and continues to have nightmares regularly regarding the accident. (See EXHIBIT 4, where Plaintiff's psychologist advises Plaintiff" some nightmares and flashbacks are normal after experiencing a traumatic event. They should decrease with time, but may never go away completely. " Plaintiff to this day, still tries to keep being put on a "waiting list for psychology, but more than not, usually none are available. (See EXHIBIT 14, where Plaintiff recently tries to see a psychologist

Case 5:23-ct-03218-FL    Document 1    Filed 07/27/23    Page 17 of 21

but none are available and is put again, on a waiting list.) As stated supra, Plaintiff can't seem to shake the thought of boots running towards his face while on the floor of the bus (Plaintiff was booted in the eye with a steel toed boot by an officer in a previous assault.). That since this event, on another medical trip, a staff member, an Officer Stoots, thought it would be fun to put a "kick me" sticker on Plaintiff's back since he knew Plaintiff had been kicked in the eye prior, He then preceded to peel the sticker off Plaintiff's back and have Plaintiff read the sticker out loud to everyone. Then as a joke, the officer lightly kicked the Plaintiff. While although this event may seem harmless to the average inmate and amusing, to the Plaintiff it was not. The Plaintiff's mind is not of ordinary firmness (meaning the Plaintiff suffers from PTSD);

Plaintiff Exercised Ordinary Care to Obtain Medical Treatment

82. That Plaintiff had made several requests for care, on his own accord. The Plaintiff has not missed one medical call out or appointment regarding his care and has properly followed all given instructions for care;

83. That Plaintiff has on his own accord, properly followed up with his care, in communications to staff, but more than not, gets a minimal response or none at all;

84. That Plaintiff has never declined any suggested medical treatment, even if he felt it may not be effective (i.e., Lanacaine topical treatment). That Plaintiff has been open to any and all forms of treatment; even to the point of having nerve block injections into his skull for the headaches from his increased post concussion syndrome;

85. That Plaintiff out of sheer frustration, has made very stern legal demands (to the borderline risk of legal confrontation) to medical staff in order to be properly treated for his pain. (See and note time of data entered (11:05 PM.) EXHIBIT 11, where Plaintiff could not sleep due to the pain he was experiencing late at night.)

CONCLUSION

86. Based on the foregoing, the Plaintiff concludes in that the government is liable for future medical expenses including but not limited to, physical therapy for Plaintiff's back, and applicable medications, lost future wages. lost household services in that Plaintiff will need assistance lifting heavy objects and doing maintenance to his vehicle that he can no longer do, past and future pain and

-18-

Case 5:23-ct-03218-FL    Document 1    Filed 07/27/23    Page 18 of 21

suffering, loss of enjoyment of life and permanent impairment, mental anguish and disfigurement;

87.  In closing, Plaintiff concludes with the statement that all of this litigation and cost to not only the Plaintiff, but the U.S. taxpayer along with the wasted scarce resources and time of the Court, could have all been completely avoided, had the government come clean and had been honest in the beginning, admitted to the obvious accident instead of digging a deeper hole to deny it and instead provided the Plaintiff with proper medical care.  That the government in the end, chose to double down and wouldn't even provide the Plaintiff with a medical mattress and blocked his contacts with his family and attorneys shows just how low the government regards the Plaintiff's care and how callous and emotionally harmful their actions were;

88.  That as the Plaintiff's grandmother Florence Marie Bower once told the Plaintiff when he was a child, "In the end, the truth always comes out in the wash."  Plaintiff still believes that to be true.

89.  Plaintiff hereby requests a sum certain of $250,000 as stated in his Tort Claim, but prays the Court allow for additional costs of counsel should one be assigned to his case;

Respectfully submitted, this the ___13th___ day of ___July___.

Brian Lee Nestor

Brian Lee Nestor
Reg. No. 09603-068
P.O. Box 999
Butner, NC  27509

-19-

# AFFIDAVIT

NOW COMES AFFIANT _Brian Lee Nestor_ , and states under penalty of perjury that the following is true and correct to the best of my knowledge and belief regarding the information that I have provided in the COMPLAINT UNDER THE FEDERAL TORT CLAIMS ACT FOR DAMAGES submitted to the United States District Court herein, pursuant to 28 U.S.C. § 1746;

1. That I, Brian Lee Nestor, am the Plaintiff within this submitted COMPLAINT UNDER THE FEDERAL TORT CLAIM ACT FOR DAMAGES;

2. That all paragraphs stated within this COMPLAINT labeled numberss(1) through (89) are true and correct;

3. That all EXHIBITS provided herein are true and correct and that the information provided in them has not been altered in any way and that the Plaintiff herein has made every effort possible within his realm to prove the veracity of his claims through these EXHIBITS consisting of a witness statement, medical records, and communications with both correctional and medical staff (in support of COMPLAIN UNDER THE FEDERAL TORT CLAIMS ACT FOR DAMAGES (attached herein)).

That the AFFIANT Sayeth Further Naught.

Sworn this _13th_ day of _July_ , 2023, by AFFIANT _____

Brian Lee Nestor

Brian Lee  Nestor
Reg. No. 09603-068
P.O. BOX 999
Butner, NC  27509

## CERTIFICATE OF SERVICE

I _Brian Lee Nestor_, do hereby certify, that a true and correct copy of the foregoing pro se Complaint under the Federal Tort Claims Act, a Motion for In Forma Pauperis, and a separate Motion for Appointment of Counsel, have all been served upon the Clerk of Court in the United States District Court for the Eastern District of North Carolina, Western Division, by placing the same in the United States Prison Postal Mailbox at the LSCI Mailroom, properly addressed with proper postage on this the _23th_ day of _July_, 2023.

_Brian Lee Nestor_
Brian Lee Nestor

Brian Lee Nestor
Reg. No. 09603-068

P.O. BOX 999
Butner, NC 27509